JACOB HOLTZ *v.* S. LANDOW FRUIT & PRODUCE COMPANY, INC., ET AL.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, Js.

Argued March 9—decided April 5, 1939.

*William S. Goldman,* with whom, on the brief, were *Benjamin F. Goldman* and *Claude B. Maxfield,* for the appellants (defendants).

*Arthur E. Feldman,* for the appellee (plaintiff).

BROWN, J.   This was an action to recover the balance of the purchase price of several lots of merchandise alleged to have been sold to the defendant and upon its president's order shipped to the Virginia Novelty Company.   The defendant's answer denied that it owed anything to the plaintiff, and pleaded specially that though it authorized him to charge it for the original order of March, 1937, but $11.73 remained unpaid thereon, and it never authorized or agreed to be responsible for the other items in the complaint.   The court gave judgment for the plaintiff to recover $681.20 damages.   By its assignments of error the defendant attacks the court's finding and conclusions, and its overruling of the defendant's claims of law.   The finding unless subject to correction, constitutes a conclusive determination adverse to the defendant, of the questions presented by these claims of law.   The primary question therefore is whether the subordinate facts were properly found, and whether these facts support the conclusions reached by the court.

The court was warranted in finding these material facts.   The defendant is a Connecticut corporation.   Its principal business was the wholesale of fruit and produce.   The Virginia Novelty Company, Inc., operator of

a concession at Savin Rock, ordered goods of the plaintiff for use in its operations, to the amount of $1436.99, requesting shipment to it on credit. This the plaintiff refused without a guarantee of payment, and on March 25, 1937, wrote the defendant about the order, stating that it would fill it if the defendant would allow the bill to be charged to it. The defendant wrote guaranteeing the order, but the plaintiff wrote back that it was advised this guarantee of the account of another corporation was valueless, requested that the order be charged directly to the defendant, and that, if necessary, the defendant amend its charter to permit dealing in this type of merchandise. The defendant did change its by-laws to meet that emergency and on March 30th gave the plaintiff written authority to charge these goods to it, to be shipped to the Novelty Company. The plaintiff shipped the goods accordingly, sending duplicate invoices to the defendant.

Samuel Landow is the president and active manager of the defendant, and practically dictates its policies. It is a closed corporation owned by him and two others. All three are active daily in its affairs and its corporate decisions are made without formality and often result from oral meetings at a moment's notice. After the March order, Landow was at the plaintiff's place of business, and one or more times at the Novelty Company's place, and verbally authorized orders for further goods to be delivered to this company and charged to the defendant. These goods were delivered, charged to the defendant, and invoices and bills therefor forwarded to it, the net balance remaining due being $651.81 plus interest. All payments on the account were made by the Novelty Company, and were credited by the plaintiff on the defendant's account. He had no account in the Novelty Company's name

and had extended it no credit, but treated all the sales as made and charged to the defendant. All of the sales were direct sales to the defendant. All were fully authorized in writing or verbally by Landow acting for the defendant and thereunto fully authorized, and he was either present assisting or fully informed of the quantity and cost of each. With every shipment to the Novelty Company the plaintiff sent an invoice to the defendant charging the merchandise to it, and also sent regular monthly statements to it showing the total balance due from it. At no time did the defendant reject any of these charges or in any way indicate that it did not recognize itself as the buyer and primary obligor for the total indebtedness. Landow had an interest in the real estate occupied by the Novelty Company until it was foreclosed, and had close personal relations with that company and with the one who did its ordering.

These facts amply support the court's essential conclusions that the defendant by its action with reference to the original order, established between itself and the plaintiff a debtor and creditor or purchaser and seller relationship; that through its authorized agent it sanctioned and authorized the further purchases; that there is a direct and primary liability upon the defendant to pay the balance due; and that the plaintiff is entitled to judgment against the defendant for $681.20 damages.

The determination that the defendant is entitled to no correction of the finding disposes of the only real question upon appeal. The court's fundamental conclusion that there was a sale of this merchandise to the defendant is one of fact, which as already suggested is supported by the subordinate facts and must stand. *Pennsylvania-Dixie Cement Corp.* v. *Lines Co.,* 119 Conn. 603, 611, 178 Atl. 659. See also *Bartolotta* v.

*Calvo,* 112 Conn. 385, 389, 152 Atl. 306. The defendant further contends that it is not liable because the contract was ultra vires. This, however, is a defense in the nature of confession and avoidance. *Lewis* v. *Clyde Steamship Co.,* 131 N. C. 652, 655, 42 So. 969. When such a defense is allowable to a defendant corporation, it must specially plead it. *Lewis* v. *Clyde Steamship Co.,* 132 N. C. 904, 916, 44 So. 666; *Conowingo Land Co.* v. *McGaw,* 124 Md. 643, 653, 93 Atl. 222; *Thomas Gordon Malting Co.* v. *Bartels Brewing Co.,* 206 N. Y. 528, 538, 100 N. E. 457; 14A C. J. 841, § 2962; 9 Fletcher, Cyclopedia of Corporations, 420, § 4547. The court did not err in overruling the defendant's contention.

There is no error.

In this opinion the other judges concurred.